[No. 16520. *En Banc.* November 15, 1921.]

COAST FIR LUMBER COMPANY, *Appellant,* v. PUGET SOUND MILLS & TIMBER COMPANY, *Respondent.*[1]

SALES (156)—BREACH OF CONTRACT—FAILURE TO DELIVER—MEASURE OF DAMAGES. The measure of damages for breach of contract for the sale of shingles being the difference between the contract price and the market price at the time of the seller's breach, recovery may be had based upon the price in the following August, when there was an unequivocal refusal to perform, although they should have been delivered within a reasonable time (FULLERTON, HOLCOMB, and TOLMAN, JJ., dissent).

Appeal from a judgment of the superior court for King county, Frater, J., entered September 11, 1920, upon findings in favor of the defendant, in an action on contract, tried to the court. Reversed.

*Bausman, Oldham, Bullitt & Eggerman* and *Walter L. Nossaman,* for appellant.

*Kerr, McCord & Ivey* and *Wm. Z. Kerr,* for respondent.

MACKINTOSH, J.—This is a suit for damages because of respondent's failure to deliver two carloads of shingles, claimed to have been ordered by the appellant. The reasonable conclusion of fact to be drawn from the documentary evidence is that, in January, 1919, the appellant ordered from the respondent, who was a manufacturer of shingles, two shipments of two carloads each, and that the latter order was filled but the former was not.

The only matter for determination is the amount of the appellant's damages, which are to be measured by the difference between the contract price and the market price at the time of the respondent's breach.

[1]Reported in 201 Pac. 747.

Although the shingles should have been delivered within a reasonable time after their order, the respondent at that time did not repudiate the contract, and it was not until sometime in August following that the appellants were justified in treating the expressions of the respondent in regard to the order as amounting to an unequivocal refusal to perform. The contract price being $2.10 per thousand, and the evidence showing that, at the time of the repudiation, the fair market price was about $4.60 per thousand, and the evidence showing that each carload contains 200,000 shingles, the appellant is entitled to judgment for $1,000.

Judgment of the lower court reversed, with directions to enter judgment in the amount named.

PARKER, C. J., BRIDGES, MAIN, and MITCHELL, JJ., concur.

FULLERTON, J. (dissenting)—The alleged contract upon which the appellant sues is found in certain letters and telegrams passing between the parties. On January 4, 1919, appellant, from Portland, Oregon, telegraphed respondent at Port Angeles, Washington, as follows:

"Ship medium car extra stars Morris also Boynton Oklahoma two ten mill use order bill lading draft here with papers."

The respondent replied by wire on January 6, 1919: "Message fourth will ship two cars Stars immediately."

On January 6, 1919, the appellant wrote to respondent as follows:

"We have your wire of today advising that you will ship the two cars of shingles immediately to Morris and Boynton, Oklahoma. We are mailing in separate enclosure, formal orders covering."

On January 15, 1919, at 10:15 p.m., the appellant sent this further telegram to the respondent:

"Can you furnish car numbers Morris Boynton. Ship two medium stars as Cheyenne two thirteen."

On January 17, at 10:28 a.m., the respondent sent the following answer:

"Message fifteenth our rates do not apply via Cheyenne will ship Morris Boynton cars next week."

On January 17, before respondent's wire of January 15 was received, the appellant wrote to the respondent as follows:

"Our customer could not wait for the two cars to go to Morris & Boynton, Oklahoma, so we are giving them cars we have in transit. Please change the destination to read Fort Worth, Texas, and be sure and route both cars Plummer, Idaho, O. W. R. & N. OSL. UP. to Denver, and C&S to Ft. Worth, if your agent will accept the routing, under the short haul bulletin, or, if this cannot be accomplished, please ship via South Omaha.

"The other two cars we wired you yesterday are for Texas destination, and trusting that you are prepared to handle them we are sending you formal orders.

"It is our understanding that the bulletin effective Sept. 15, last, rearranging the routings, takes nearly all shingles into Texas, through Cheyenne."

On the following week, as promised in its telegram of January 17, the respondent shipped two cars of extra Star A shingles, changing the destination to Fort Worth, Texas, as directed in the letter last quoted.

On February 1 the appellant telegraphed respondent as follows:

"Ship two medium cars stars us Ft. Worth two twenty net also rush two older orders."

On the same day the respondent replied by telegram as follows:

"Unable to handle order for star shingles. Shingle mill closed down temporarily."

On February 1 the appellant also wrote to the respondent as follows:

"We are today in receipt of copy of your invoice covering car RCNo 13126 with destination, Fort Worth, Texas.

"We are quite sure that you are holding two more of our orders which we trust you will get moving promptly as they are now over three weeks old."

On February 3, 1919, the respondent replied by letter as follows:

"In response to your favor of the 1st inst., will say that all of your orders for Star Shingles have been completed with shipment of car R.C. 131263.

"In your letter you state that you think we are holding orders for two more cars, and will say that such is not the case, as the two orders referred to were returned to you upon receipt."

On February 5, 1919, the appellant wrote to the respondent, referring to prior telegrams and stating its position as follows:

"While we received no formal acceptance of the two cars sent you at $2.13, you billed the two cars shipped at $2.13 and we, of course, concluded that you had accepted the orders and were shipping these two cars ahead of the two which you had at $2.10. Expecting to receive them, we obligated ourselves by going out and buying the Morris and Boynton cars at a loss in order to give our customer service."

On February 10, 1919, the respondent answered this letter as follows:

"We have your favor of the 5th inst., regarding orders for two cars of Star Shingles, of which there

seems to have been some misunderstanding between yourselves and our Port Angeles office.

"The writer is in charge of all sales for the Port Angeles Mill, also for the Crown Lumber Company at Mukilteo, Wn., and all correspondence pertaining to inquiries or orders should in the future be addressed to this office. We are very sorry indeed there was any misunderstanding regarding these shingles and we would gladly make shipment of the two cars in question but for the fact that our mill is closed down, not having been in operation for the past thirty days and we are unable to say at this writing when we will start up again. It is, therefore, impossible to make shipment of any shingles as we have none on hand."

The appellant, on February 13, 1919, answered this letter, asking that the respondent ship the two cars as soon as the mill resumed operations, and on March 20 also requested a shipment. These letters were not answered. There was no further correspondence between the parties until August 21, 1919, when the appellant made another demand for two cars. The respondent replied by setting out its letter of February 10, 1919, and by disclaiming that it had any accepted orders for shingles which it had not fulfilled.

It seems to me that it should require no extended argument to show that the appellant is not entitled to recover. The rule is general that, where the contract claimed must be found in letters and telegrams passing between the parties, and these are capable of different interpretations and are, in fact, differently interpreted, there is no contract. In other words, if the language used in the writings forming the supposed contract may fairly mean either one of two things, each party is at liberty to attach to it his own meaning, and neither, if he acts in good faith, can be held responsible to the other where his understanding differs

from that of the other. Here, in my opinion, the writings are sufficiently indefinite and confusing as to admit of different interpretations. Nor can I find anything in the record that indicates anything other than an honest difference of opinion. There should, therefore, be no recovery, and I am compelled to dissent from the conclusion of the majority holding to the contrary.

But, if I am wrong in the foregoing view of the evidence, I think the recovery awarded too large. As will be seen by the quotation I have made from the respondent's letter of February 10, 1919, the respondent then distinctly repudiated the appellant's claim that it had an accepted unfulfilled order for two car loads of shingles. If, as stated in the majority opinion, the measure of damages is the difference between the contract price and the market price at the time of the respondent's breach of the contract, the price should be determined as of that date rather than of a date in August following. The evidence overwhelmingly shows that the market price of shingles on February 10, 1919, was but a few cents per thousand in advance of the contract price, entitling the appellant to recover but little more than nominal damages, not the very considerable sum the majority have seen fit to award. In this connection, also, I call attention to the further fact that the appellant, by its own showing, has covered any possible loss that could accrue to it by the rise in the price of shingles subsequent to February 5, 1919. By its letter of that date it appears that it had prior thereto supplied its customers by buying the shingles in the open market.

HOLCOMB, J. (dissenting)—I agree with the majority upon the right of appellant to recover, but I agree

with Judge Fullerton as to the measure of damages, on which grounds alone I dissent.

TOLMAN, J. (dissenting)—I concur with Judge Fullerton upon the last ground stated.